UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re Application of<br><br>Alpine Partners (BVI), L.P. and FourWorld Event Opportunities, LP,<br><br>Petitioners, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. 23- |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS' APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERYFOR USE IN A FOREIGN PROCEEDING**

John P. Lewis
**HAYWARD PLLC**
10501 N. Central Expy, Suite 106
Dallas, Texas 75231
Telephone: (972) 755-7100
JPLewis@haywardfirm.com

Duane L. Loft*
Shireen A. Barday*
John McAdams*
**PALLAS PARTNERS (US) LLP**
75 Rockefeller Plaza
New York, NY 10001
Telephone: (212) 970-2300
Duane.Loft@pallasllp.com
Shireen.Barday@pallasllp.com
John.McAdams@pallasllp.com

*Pro hac vice* application forthcoming

*Counsel for Petitioners*

**TABLE OF CONTENTS**

FACTUAL BACKGROUND ................................................................................................... 3
    A.   Parties to the Appraisal Proceeding and the Merger. ...................................................... 3
    B.   The Appraisal Proceeding. .............................................................................................. 6
    C.   Respondent and the Discovery Sought........................................................................... 7
ARGUMENT .................................................................................................................................. 7
    I.   The Application Satisfies the Three Statutory Requirements of 28 U.S.C. § 1782. ............ 8
        A.   Respondent "Resides" or Is "Found in" This District. ..................................................... 8
        B.   The Discovery Sought Is "For Use" in a Foreign Proceeding. ........................................ 8
        C.   Petitioners Are Each an "Interested Person." .................................................................. 9
        D.   Section 1782 Applies Extraterritorially. .......................................................................... 9
    II.   The *Intel* Discretionary Factors Weigh in Favor of Granting Discovery. ........................ 10
        A.   Respondent Is Not a Participant in the Appraisal Proceeding....................................... 10
        B.   The Cayman Court Will Be Receptive to the Evidence Sought.....................................11
        C.   Petitioners Are Not Circumventing Foreign Proof-Gathering Restrictions. ................. 13
        D.   The Subpoena Is Not Unduly Burdensome................................................................... 14
CONCLUSION............................................................................................................................. 16

## TABLE OF AUTHORITIES

**CASES**

*Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*,
   No. 14-20668, 613 F. App'x 319 (5th Cir. 2015) .................................................................. 10, 17

*Ecuadorian Plaintiffs v. Chevron Corp.*,
   619 F.3d 373 (5th Cir. 2010) ...................................................................................... 13, 14, 16

*Eni Ghana Exploration and Prod. Ltd. v. Gaffney Cline & Assocs., Inc.*,
   No. 4:22-MC-01285, 2022 WL 3156224 (S.D. Tex. Aug. 8, 2022) .................................... 13, 15

*Euromepa, S.A. v. R. Esmerian, Inc.*,
   51 F.3d 1095 (2d Cir. 1995) ............................................................................................... 17

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
   No. 19-mc-80215-WHO(TSH), 2020 WL 820327 (N.D. Cal. Feb. 19, 2020) ......................... 12

*In re Application of Athos Asia Event Driver Master Fund*,
   No. 4:21-mc-00153-AGF, 2021 WL 1611673 (E.D. Mo. Apr. 26, 2021) ............................... 15

*In re Application of HydroDrive Nigeria, Ltd.*,
    NO. 13–MC–0477, 2013 WL 12155021 (S.D. Tex. May 29, 2013) .................... 11, 12, 13, 17

*In re del Valle Ruiz*,
   939 F.3d 520 (2d Cir. 2019) ................................................................................................ 11

*In re Dickson*,
   No. 20-mc-51 (RA), 2020 WL 550271 (S.D.N.Y. Feb. 4, 2020) ............................................ 14

*In re Empresa Publica De Hidrocarburos Del Ecuador - EP Petroecuador v. WorleyParsons
   Int'l, Inc.*,
   No. 4:19-MC-2534, 2020 WL 13412872 (S.D. Tex. Apr. 13, 2020) ...................................... 10

*In re FourWorld Event Opportunities, LP*,
   No. 21-mc-00283-RGS, ECF No. 6 (D. Del. July 29, 2021) .................................................. 15

*In re Frederick*,
   2020 WL 5742772 (W.D. Tex. Sept. 24, 2020) ..................................................................... 11

*In re Hopkins*,
   No. 20-mc-80012-SVK, 2020 WL 733182 (N.D. Cal. Feb. 13, 2020) .................................... 14

*In re Kuwait Ports Auth.*,
  1:20-MC-00046-ALC, 2021 WL 5909999 (S.D.N.Y. Dec. 13, 2021) ...................................... 14

*In re NJSC NAFTOGAZ*,
  No. 3-18-MC-92-L-BK, 2019 WL 13203773 (N.D. Tex. Sept. 30, 2019) ................................ 13

*In re Penner*,
  No. 17-cv-12136-IT, 2017 WL 5632658 (D. Mass. Nov. 22, 2017) ......................................... 15

*In re Platinum Partners Value Arbitrage Fund L.P.*,
  583 B.R. 803 (Bankr. S.D.N.Y. 2018) ...................................................................................... 15

*In re Thales Dis Ais Deutschland GmbH*,
  No. 3:21-MC-303-S, 2021 WL 7707268 (N.D. Tex. Nov. 5, 2021) .................................... 12, 16

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ........................................................................................................ passim

*LEG Q LLC v. RSR Corp.*,
  No. 3:17-cv-1559-N-BN, 2017 WL 3780213 (N.D. Tex. Aug. 31, 2017) ..................... 13, 15, 16

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015) ................................................................................................... 15

*Texas Keystone, Inc. v. Prime Natural Resources, Inc.*,
  694 F.3d 548 (5th Cir. 2012) .................................................................................................. 17

*Wiwa v. Royal Dutch Petroleum Co.*,
  392 F.3d 812 (5th Cir. 2004) ............................................................................................ 16, 17

**STATUTES**

28 U.S.C. § 1782 ............................................................................................................... passim

Alpine Partners (BVI), L.P. and FourWorld Event Opportunities, LP, (together, the "**Petitioners**"), respectfully submit this Application pursuant to 28 U.S.C. § 1782 to take limited discovery from Eric Foss ("**Respondent**") for use in connection with the appraisal proceeding filed in the Grand Court of the Cayman Islands (the "**Cayman Court**") described more fully below (the "**Appraisal Proceeding**"). In the Appraisal Proceeding, Petitioners (along with other dissenting shareholders) seek a determination of the fair value of their former shares in Diversey Holdings, Ltd. ("**Diversey**" or the "**Company**"), a Cayman Islands company that was delisted from the NASDAQ and became a privately held company on July 5, 2023. Petitioners' shares were forcibly canceled through a merger (the "**Merger**") for a price far below the fair value calculated by the Special Committee's financial advisor and without routine minority shareholder safeguards, such as majority-of-the-minority shareholder approval or a go-shop period to consider alternative bids.

Through this Application, Petitioners seek discovery (the "**Requested Discovery**") from Respondent, the Chairman of the Special Committee that approved the Merger and a member of the Company's board of directors, on topics highly relevant to the issues in the Appraisal Proceeding, including the materials reviewed by the Special Committee in its reviews of the Merger proposals and communications between the Special Committee and the Company, the Company's controlling shareholder, and the buyers.

Section 1782 authorizes this Court to order discovery from any person or entity that resides or is found in this District to assist with pending or contemplated proceedings before a foreign tribunal. Section 1782 codifies Congress's "twin aims" of "provid[ing] efficient means of assistance to participants in international litigation in our federal courts and [ ] encourag[ing]

foreign countries by example to provide similar means of assistance to our courts." *Tex. Keystone Inc. v. Prime Nat. Res. Inc.*, 694 F.3d 548, 553–54 (5th Cir. 2012).  Petitioners' Application meets the statutory requirements of Section 1782: (i) Respondent "resides" or is "found" in this District because he is a resident of Dallas, Texas; (ii) the Requested Discovery is "for use" in a foreign proceeding, namely the Appraisal Proceeding; and (iii) Petitioners, each of which is a party to the Appraisal Proceeding, easily meet the standard for an "interested person" under the statute.  In addition, each of the Supreme Court's factors that guide this Court's exercise of discretion under Section 1782 weigh decisively in favor of granting Petitioners' Application.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).

*First*, Petitioners seek discovery from a "nonparticipant" in the foreign action.  *Id.*  Respondent is not a party to the Appraisal Proceeding or subject to the jurisdiction of the Cayman courts.  This is a sufficient basis for the Court to hold that the first factor is satisfied.

*Second*, there is no indication, let alone the required "authoritative proof," suggesting that the Cayman Court might be unreceptive to Section 1782 assistance.  *Id.*  To the contrary, as established in the declaration of Petitioners' Cayman Islands counsel, Rocco Cecere, Cayman Islands courts have expressly allowed litigants to seek documents through Section 1782.

*Third*, the Application is not an improper attempt to circumvent any foreign discovery restrictions on proof gathering.  *Id.*  The requested discovery does not implicate any privilege or special protection that would make it improper under Cayman Islands law.

*Fourth*, the Requested Discovery is not unduly intrusive or burdensome.  *Id.*  To the contrary, the subpoena is narrowly tailored to seek evidence and information directly relevant to the critical issues in the Appraisal Proceeding, including documents related to the Merger process and the Company's valuation.

*Finally*, the Court should exercise its discretion to order production of any responsive discovery that Respondent has in his possession, custody, or control, regardless of the physical location of that evidence. Section 1782 is extraterritorial in reach, and courts commonly order discovery of evidence located abroad, particularly where, as here, the discovery is from a third party not subject to the jurisdiction of the foreign court.

## FACTUAL BACKGROUND

### A.   Parties to the Appraisal Proceeding and the Merger.

Petitioners are members of the group of dissenting shareholders who formerly held shares in the Company and are parties to the Appraisal Proceeding. *See* Cecere Decl. ¶ 7.

The Company is a Cayman Islands exempted company headquartered in Fort Mill, South Carolina. Cecere Decl. Ex. M (the "**Proxy Statement**") at 1. The Company produces hygiene and cleaning products. *Id.* Before the Merger, the Company's stock was publicly traded on the NASDAQ under the symbol "DSEY." *Id.* The Company's controlling shareholder was the Bain Shareholder, an entity advised by Bain Capital Private Equity, LP ("**Bain Capital**") that owned 73% of the Company's shares.

Discussions of a merger between the Company and Solenis, another specialty chemical company, initially began in earnest in July 2021, when representatives of Platinum (of which Solenis is a portfolio company) and the Bain Shareholder began to have informal discussions relating to a possible business combination of the entities. *Id.* at 18.

Several months later, on August 3, 2022, the Company received a nonbinding indication of interest from Platinum and Solenis setting forth their interest in pursuing a take-private acquisition of the Company and a subsequent combination of the Company with Solenis at a price of $11.00 per ordinary share. *Id.* at 18.

The parties then began a due diligence process, and on September 26, 2022, Platinum informed the Company's board that it and Solenis would be unable to proceed with the transaction on the terms contemplated by the August 3 letter, in light of, among other things, downward pressure on the Company's trading price, but that they would continue the diligence process. *Id.* The parties restarted discussions around a potential business combination in December 2022, and on January 11, 2023, the Company received an updated proposal from Platinum and Solenis setting forth revised terms for a take-private acquisition of the Company and subsequent combination of the Company and Solenis at $7.50 per ordinary share—a reduction of more than 30% from the August 3 proposal. *Id.* at 20. The January 11 letter contemplated that the Bain Shareholder would rollover a portion of the ordinary shares owned by it into a combined entity and indicated that the Bain Shareholder would be expected to execute a voting agreement in connection with the proposed transaction. *Id.* Because the Bain Shareholder is a majority owner of the Company's outstanding ordinary shares and held sufficient voting power to meet the two-thirds threshold requirement to approve the transaction under Cayman Islands law, an agreement to vote in favor of the proposed transaction with the Bain Shareholder would result in a majority of shares voting in favor of the proposed transaction.

On January 14, 2023, the board formed a five-member Special Committee, of which Respondent was named Chairman, to assess and negotiate the merger proposals. *Id.* On January 21, 2023, the Special Committee selected Evercore as its financial advisor. *Id.* at 21. On February 1, 2023, Evercore presented its preliminary financial analysis to the Special Committee. *Id.* at 21–22. The next day, the Special Committee instructed Evercore to make a counterproposal of at least $10.20 per ordinary share with (i) a non-waivable condition that a majority of the minority shareholders approve the transaction ("**MoM Protection**") and (ii) an ability of the minority

4

shareholders to receive cash consideration or contribute ordinary shares to the surviving entity on the same terms as the Bain Shareholder (the "**Public Rollover Option**"). *Id.* at 22. In formulating its proposal, Evercore considered, among other factors (i) higher transaction multiples in the hygiene/cleaning sectors than represented by Platinum's and Solenis's offer of $7.50 per ordinary share; (ii) the potential easing of both challenging market headwinds and raw material cost increases that affected the Company's financial performance in that moment; and (iii) trading multiples for peer companies were at relatively low levels compared with historical averages. *Id.* Platinum and Solenis had seized on these convergent factors to present an opportunistically low bid.

On February 7, 2023, Platinum delivered a counterproposal of $7.75 per ordinary share, only $0.25 higher than the previous bid, with no MoM Protection or Public Rollover Option. *Id.* The Special Committee rejected this proposal, and it determined that, for the benefit of the minority shareholders, a transaction would need to include at least one of a Public Rollover Option, MoM Protection, or cash consideration significantly higher than $7.75 per ordinary share. *Id.* However, Platinum's next proposal on February 14, 2023, did not contain either the Public Rollover Option or MoM Protection, and it offered only $7.90 per ordinary share—less than a 2% increase from its previous offer. *Id.* After more negotiations, on March 4, 2023, the Special Committee determined to provisionally accept an offer of only $8.40 per ordinary share for the minority shareholders, with no Public Rollover Option or MoM Protection. *Id.* at 26. Despite just weeks earlier recommending a price of at least $10.00 per ordinary share in addition to the Public Rollover Option *and* MoM Protection, on March 7, 2023, Evercore rendered an oral opinion to the Special Committee that $8.40 per ordinary share with *neither* of these protections was fair to the minority shareholders. *Id.* Later that day, the Special Committee, including Respondent, recommended

5

that the board approve the merger agreement, and on March 8, 2023, the parties executed the merger agreement. *Id.* at 27.

Despite these critical flaws, among others, the Company issued a proxy statement on May 15, 2023, that recommended that the minority shareholders vote in favor of the Merger. *Id.* Listing the Special Committee's reasons for this recommendation, the Proxy Statement includes "recent market volatility related to the macroeconomic headwinds facing the Company" and "the current and historical market prices of the Ordinary Shares," contradicting Evercore's prior analysis that cited these as reasons why the proposals were undervalued. *Compare id.* at 28 *with id.* at 22. Regardless, approval was a *fait accompli* as the Bain Shareholder, who held approximately 73% of the outstanding shares, had already executed the voting agreement in which it agreed "irrevocably and unconditionally" to vote its shares in favor of the Merger, thereby satisfying the two-thirds threshold requirement necessary to pass a resolution under Cayman Islands law. *Id.* at C-2, 29. The Company held an extraordinary general meeting on June 8, 2023, to vote on the proposal and, as expected, the Merger was approved. Cecere Decl. Ex. N (Diversey Holdings Ltd. (Form 8-K) (June 8, 2023)). On July 5, 2023, the Merger completed, and the Company was delisted from the NASDAQ. Cecere Decl. ¶ 21.

**B.     The Appraisal Proceeding.**

On August 23, 2023, Petitioners and other dissenting shareholders initiated a proceeding before the Cayman Court under Section 238 of the Companies Act of the Cayman Islands ("**Section 238**"), asking the Cayman Court to determine the fair value of their former shares in the Company. Petitioners and the other dissenting shareholders will have the opportunity to present, *inter alia*, documentary evidence, expert valuation evidence, witness testimony, and legal arguments to the Cayman Court. In determining the fair value of the dissenting shareholders'

former shareholdings, the Cayman Court will examine both the fundamental and intrinsic valuation of the Company, as well as potential market-based measures such as the Merger price itself. Accordingly, the Cayman Court will analyze the fairness of the process that led to the Special Committee's and the Company's approval of the Merger. *See* Cecere Decl. at ¶¶ 32–34.

### C. Respondent and the Discovery Sought.

Respondent was the Chairman of the Special Committee that approved the Merger and the Non-Executive Chairman of the Company's board. Proxy Statement at 19, 20. As the Chairman of the Special Committee, Respondent was a key participant in the negotiations culminating in the Merger. Since the Merger, the Respondent has held the position of senior advisor at Bain Capital.

Petitioners' Application seeks discovery from Respondent on issues relevant to the Appraisal Proceeding, including: (i) the fairness of the August 3 price and the final Merger Price; (ii) the rationale for the Special Committee and Evercore to approve the reduced Merger Price with no minority shareholder protections; (iii) the process that led the Special Committee and the Company to consider, negotiate, and approve the Merger; and (iv) the independence of the Special Committee. The Cayman Court will accept and consider any relevant evidence submitted by the parties, so long as it is relevant and not otherwise subject to an exclusionary rule of evidence. Cecere Decl. ¶¶ 32, 44. This Requested Discovery will accordingly assist the parties and the valuation experts as well as the Cayman Court in evaluating the Merger and determining the fair value of Petitioners' former shares in the Company. *Id.* ¶¶ 52–54.

## ARGUMENT

Section 1782 of Title 28 of the United States Code permits U.S. district courts to grant discovery for use in a pending foreign proceeding or a foreign proceeding. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 243 (2004). "Three statutory requirements must be satisfied before a district court may grant assistance under § 1782(a): (1) the person from whom discovery

is sought must reside or be found in the district in which the application is filed; (2) the discovery must be for use in a proceeding before a foreign tribunal; and (3) the application must be made by . . . any interested person." *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*, No. 14-20668, 613 F. App'x 319, 322 (5th Cir. 2015). If these statutory requirements are met, the court then considers four discretionary *Intel* factors. *Intel*, 542 U.S. at 264–65. "The bounds of the district court's discretion are informed by the twin aims of the statute, which are to provide efficient means of assistance in our federal courts to participants in international litigation and to encourage foreign countries by example to provide similar means of assistance to our courts." *Bravo Express*, 613 F. App'x at 321–22 (cleaned up).

I. **The Application Satisfies the Three Statutory Requirements of 28 U.S.C. § 1782.**

    A. **Respondent "Resides" or Is "Found in" This District.**

To satisfy the first statutory requirement, "the inquiry is whether the parties from whom discovery is sought in the § 1782(a) motion . . . reside in the . . . District." *Bravo Express*, 613 F. App'x at 322. As explained in the accompanying declaration of a licensed investigator, according to the results of searches in proprietary databases, Respondent resides in Dallas, Texas. Declaration of Tyler Burtis ("**Burtis Decl.**") ¶ 3. The Application therefore satisfies the first statutory requirement. *Bravo Express*, 613 F. App'x at 322.

    B. **The Discovery Sought Is "For Use" in a Foreign Proceeding.**

To satisfy the second statutory requirement, the requested discovery must be "for use" in a foreign proceeding. *Intel*, 542 U.S. at 258. "[T]he Fifth Circuit [has] held that an applicant had satisfied the 'for use' requirement simply by identifying and describing a foreign proceeding 'within reasonable contemplation,' which [does] not entail a showing of relevance or necessity." *In re Empresa Publica De Hidrocarburos Del Ecuador - EP Petroecuador v. WorleyParsons Int'l, Inc.*, No. 4:19-MC-2534, 2020 WL 13412872, at *4 (S.D. Tex. Apr. 13, 2020).

8

As explained by Petitioners' Cayman Islands counsel, the Requested Discovery may be submitted in the Appraisal Proceeding. Cecere Decl. ¶¶ 45–51 (explaining that discovery obtained through Section 1782 may be submitted in Cayman Islands appraisal proceedings).

### C. Petitioners Are Each an "Interested Person."

To satisfy the third statutory requirement, Petitioners must each be an "interested person." "No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *In re Frederick*, 2020 WL 5742772, at *2 (quoting *Intel*, 542 U.S. at 256). Petitioners are parties to the Appraisal Proceeding, Cecere Decl. ¶ 2, and therefore are "interested persons" within the meaning of Section 1782. *See Frederick*, 2020 WL 5742772 at *2 ("First, Frederick is a party to the underlying New Zealand Lawsuit, and therefore is considered an 'interested person' under § 1782(a)."). All of Section 1782's statutory elements are thus satisfied here.

### D. Section 1782 Applies Extraterritorially.

That discovery may be located abroad does not change the analysis under the statutory requirements. "Section 1782 does not state that responsive documents must be in the district . . . finding [respondent] within our district is the only nexus necessary for us to be able to compel production of all documents." *In re Application of HydroDrive Nigeria, Ltd.*, NO. 13–MC–0477, 2013 WL 12155021, at *1–2 (S.D. Tex. May 29, 2013) (finding Section 1782 applies extraterritorially and "declin[ing] [Respondent's] invitation to write a requirement into the statute that simply is not there"); *In re del Valle Ruiz*, 939 F.3d 520, 532–33 (2d Cir. 2019) (holding that "§ 1782 can be used to reach documents stored overseas" and "the text of § 1782 authorizes discovery pursuant to the Federal Rules of Civil Procedure" which, in turn, "authorize extraterritorial discovery so long as the documents to be produced are within the subpoenaed

9

party's possession, custody, or control."). To the extent Respondent may assert that the relevant documents are located outside the United States, those documents are nonetheless in the possession, custody, and control of Respondent and thus are subject to discovery under Section 1782. *See, e.g.*, *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-mc-80215-WHO(TSH), 2020 WL 820327, at *10 (N.D. Cal. Feb. 19, 2020) (declining to "limit production to documents physically located within the United States" and explaining that "concerns about producing documents located outside the United States is largely anachronistic, as Respondents themselves disclosed that documents and information are often located in electronic storage, which can be accessed with equal effort from any location").

## II.     The *Intel* Discretionary Factors Weigh in Favor of Granting Discovery.

Once the statutory threshold requirements of Section 1782 are met, a district court considers, in its discretion, whether to order the requested discovery. To do this, the district court looks to the four *Intel* factors. *See Intel*, 542 U.S. at 264. Each of the *Intel* factors is discussed below and weighs in favor of granting the Application.

### A.     Respondent Is Not a Participant in the Appraisal Proceeding.

"As to the first discretionary factor, the Supreme Court observed in *Intel* that, 'when the person from whom discovery is sought is a participant in the foreign proceeding . . ., the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.'" *In re Thales Dis Ais Deutschland GmbH*, No. 3:21-MC-303-S, 2021 WL 7707268, at *2 (N.D. Tex. Nov. 5, 2021) (quoting *Intel*, 542 U.S. at 264); *HydroDrive Nigeria*, 2013 WL 12155021, at *4 (granting discovery where respondent "is beyond the jurisdiction of the Nigerian tribunals"). "What's more, Section 1782 does not require [an applicant] to seek discovery in the foreign jurisdiction before

10

seeking the assistance of a district court." *Eni Ghana Exploration and Prod. Ltd. v. Gaffney Cline & Assocs., Inc.*, No. 4:22-MC-01285, 2022 WL 3156224, at *4 (S.D. Tex. Aug. 8, 2022) (citation omitted) (collecting cases); *HydroDrive Nigeria,* 2013 WL 12155021, at *4 ("Section 1782 does not require [Petitioner] to seek discovery in the foreign jurisdiction before seeking the assistance of a district court.").

Respondent is not a party to the Appraisal Proceeding. Cecere Decl. ¶ 36. Moreover, Cayman law does not provide Petitioners any applicable or efficient means by which they can obtain the discovery sought in this Application. *Id.* ¶ 41. As a non-party, Respondent is not subject to party discovery in the Appraisal Proceeding. *Id.* ¶ 36. Further, because Respondent is not domiciled in the Cayman Islands, the Grand Court will not have jurisdiction to compel discovery from him. Accordingly, the first *Intel* factor weighs in favor of granting the Application.[1] *See In re NJSC NAFTOGAZ*, NO. 3-18-MC-92-L-BK, 2019 WL 13203773, at *2 (N.D. Tex. Sept. 30, 2019) ("Here, the enumerated factors favor granting the Application: (1) DeGolyer & MacNaughton is a nonparticipant in the Dutch proceedings.").

### B. The Cayman Court Will Be Receptive to the Evidence Sought.

The second *Intel* factor requires courts to consider whether the "nature, attitude, and procedures" of the foreign tribunal indicate that it is receptive to Section 1782 assistance. Under the second *Intel* factor, it is Respondent's burden to "provide 'authoritative proof' that a foreign tribunal would reject evidence because of a violation of an alleged foreign privilege." *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010); *see also LEG Q LLC v. RSR Corp.*,

---

[1] Respondent is a director at the Company, which is a participant in the Appraisal Proceeding. For the avoidance of doubt, Petitioners seek only documents that are not in the Company's possession, custody, or control that it will produce in the Appraisal Proceeding. *See* Declaration of Shireen A. Barday, Ex. 1, at Instructions ¶ 1.

No. 3:17-cv-1559-N-BN, 2017 WL 3780213, at *9 (N.D. Tex. Aug. 31, 2017) (finding that "Respondents' suppositions and inferences—whether reasonable or not—are not the same as a clear directive or authoritative proof that the [Foreign] Court would reject evidence obtained with the aid of Section 1782."). It also is not enough to show "that the discovery sought by [the petitioner] would not be available in [the foreign tribunal]" absent a "judicial, executive or legislative declaration that clearly demonstrates that allowing discovery in this case would offend" the "judicial norms" of the foreign court. *Ecuadorian Plaintiffs*, 619 F.3d at 378.

The Cayman Court will consider any evidence that bears on determining the fair value of a company's shares. *See* Cecere Decl. ¶ 30. Indeed, the Cayman Islands Court of Appeal ("**CICA**," whose decisions are binding on the Cayman Court, *see id.* ¶ 4), has underscored that third-party materials are relevant in Section 238 proceedings, reasoning:

> [I]f third party valuations in the possession of the company are relevant, so are third party valuations not in the possession of the company . . . . After all, the question of fair value is closely related to the question of what a willing buyer and a willing seller would exchange for the shares of the company (or for the company as a whole): and that question is closely related to valuations conducted within the market generally.

*Id.*, Ex. C (*Re Qunar Cayman Islands Ltd.* (2018 1 CILR 199) ¶ 60). This includes discovery obtained under Section 1782, including pre-trial deposition testimony, which the CICA has explicitly held "is a right conferred by US law—it is not a right conferred by, or to be withheld under, Cayman law." *Id.*, Ex. E (*Lyxor Asset Mgmt. S.A. v. Phoenix Meridian Equity Ltd.* [2009 CILR 553] at 575). Accordingly, the Cayman Court has made procedural orders in Cayman Islands appraisal proceedings that acknowledge and accommodate discovery obtained through Section 1782. Cecere Decl. ¶ 44. Further, multiple U.S. courts have recognized that Cayman Islands' courts are receptive to evidence obtained through Section 1782,[2] including in support of

---

[2] *See also In re Kuwait Ports Auth.*, 1:20-MC-00046-ALC, 2021 WL 5909999, at *10 (S.D.N.Y.

12

different Cayman Islands appraisal proceedings. *See In re FourWorld Event Opportunities, LP*, No. 21-mc-00283-RGS, ECF No. 6 (D. Del. July 29, 2021) (Loft Decl. Ex. 2); *In re Application of Athos Asia Event Driver Master Fund*, No. 4:21-mc-00153-AGF, 2021 WL 1611673, at *1 (E.D. Mo. Apr. 26, 2021) ("There is no indication in the record here that a discovery order would be unwelcome by the Cayman Islands court."). Therefore, the second *Intel* factor strongly favors granting the Application. *See Eni Ghana*, 2022 WL 3156224, at *5 (finding *Intel II* weighed in favor of granting application "when the foreign courts at issue 'are generally receptive to § 1782 evidence.'" (citation omitted)).

### C. Petitioners Are Not Circumventing Foreign Proof-Gathering Restrictions.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. This requires that a Respondent "cite . . . rules that 'prohibit' [petitioner] from using Section 1782 documentary or deposition evidence," or that "would pit this Court against, or contradict any rulings of, the [Foreign] court." *LEG Q LLC*, 2017 WL 3780213, at *10; *see also Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015) (finding that the third *Intel* factor weighs against discovery only in the extreme circumstances where a Section 1782

---

Dec. 13, 2021) ("The record contains no clear and express directive under Cayman law or policy that would demonstrate a lack of receptivity to judicial assistance from federal courts in the United States."); *In re Hopkins*, No. 20-mc-80012-SVK, 2020 WL 733182, at *3 (N.D. Cal. Feb. 13, 2020) (granting application where "there is no indication that the Cayman Islands court would not be receptive to the information sought by [petitioner]."); *In re Dickson*, No. 20-mc-51 (RA), 2020 WL 550271, at *1 (S.D.N.Y. Feb. 4, 2020); *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 816 (Bankr. S.D.N.Y. 2018) ("In support of this assertion, the Liquidators present unrebutted that, far from being hostile to Cayman litigants seeking evidence under U.S. law, Cayman Islands' courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law."); *In re Penner*, No. 17-cv-12136-IT, 2017 WL 5632658, at *3 (D. Mass. Nov. 22, 2017) (finding Cayman Islands' court "is open to receiving § 1782 discovery"); *Gushlak v. Gushlak*, 486 F. App'x 215, 218 (2d Cir. 2012).

application would circumvent "proof-gathering restrictions," that is, "rules akin to privileges that prohibit the acquisition or use of certain materials").

The discovery sought does not attempt to circumvent any proof-gathering restrictions in the Cayman Islands. To the contrary, as the Cecere Declaration explains, "Cayman Islands courts expect the parties to obtain the evidence they believe is necessary to prosecute their case. Accordingly, there is no requirement to obtain permission from the [Cayman Court] before seeking relevant evidence abroad, including through Section 1782 applications." Cecere Decl. ¶ 42. Rather than circumventing any Cayman Islands proof-gathering restriction, Petitioners' Application seeks to assist the Cayman Court's determination of the fair value of the dissenting shareholders' former shareholdings. *Id.* ¶¶ 26–34. The third *Intel* factor thus also weighs heavily in favor of granting the Application.

### D. The Subpoena Is Not Unduly Burdensome.

The final *Intel* factor looks to whether the discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. *LEG Q LLC*, 2017 WL 3780213, at *11 ("The intrusiveness and burden of Section 1782 disclosure are evaluated under the same standards that typically govern discovery requests under the Federal Rules of Civil Procedure."). Additionally, "[t]he moving party has the burden of proof to demonstrate that compliance with the subpoena would be unreasonable and oppressive." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (cleaned up).

*First*, the Subpoena here is "sufficiently narrowly tailored and not unduly intrusive or burdensome" because the "documents Petitioner[s] seek[] are all directly related to the claims asserted in the [Foreign] litigation. Section 1782 is thus an effective mechanism for obtaining the

targeted discovery sought by Petitioner[s]." *Thales*, 2021 WL 7707268, at *3; *LEG Q LLC*, 2017 WL 3780213, at *11 (finding no undue burden in producing 12 categories of documents and depositions, such as "[a]ll documents . . . concerning . . . the Board of Directors" and "[d]ocuments related to . . . each director's financial interests" (internal quotation marks omitted)). Petitioners only seek evidence that is relevant to the issues in the Appraisal Proceeding, namely, evidence related to the Merger and the Company's valuation. Petitioners' Cayman Islands counsel confirms that the discovery sought by Petitioners is relevant to the key issues in the Appraisal Proceeding and "will be used by and will assist the experts retained by the Dissenting Shareholders (including the Petitioners) and the Company, as well as the Grand Court itself, to determine the fair value of the Company's shares." Cecere Decl. ¶ 52.

*Second*, the Subpoena also is temporally limited to a period from January 1, 2021 to July 5, 2023—ranging from the month Solenis and Diversey signed a global partnership agreement to the date of the Merger's closure. *See HydroDrive Nigeria,* 2013 WL 12155021, at *4 (finding no undue burden with ten requests limited to three years).

*Third*, a deposition is not unduly burdensome here. Courts in this Circuit routinely grant depositions of third parties under Section 1782. *See, e.g.*, *NJSC NAFTOGAZ*, 2019 WL 13203773, at *2; *LEG Q LLC*, 2017 WL 3780213, at *9; *In re Application of Eurasian Bank Joint Stock Co.*, No. 3:15-mc-106-L-BN, 2015 WL 6438256, at *3 (N.D. Tex. Oct. 21, 2015).

*Finally*, to the extent the Court has any remaining concerns about the relevance, breadth, or burden of these requests, those concerns are addressed most appropriately through proceedings after the Subpoena is served, rather than by denying the petition. If the Court finds merit to such objections, "'[g]enerally, modification of a subpoena is preferable to quashing it outright.'" *Texas Keystone*, 694 F.3d at 555 (quoting *Wiwa*, 392 F.3d at 818); *Bravo Express*, 613 F. App'x at 324

("a district court abuses its discretion when it does not . . . attempt to modify the subpoena to cure any overbreadth" (internal citations and quotations omitted)); *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995) ("[I]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright."). Petitioners are also willing to meet and confer with Respondent about the Subpoena. Respondent will be able to raise any burden concerns in a particularized manner at that time, and Petitioners can then further tailor their requests, if necessary and as appropriate.

## CONCLUSION

Petitioners respectfully requests that the Court grant their Application.

Dated: November 28, 2023

By: */s/ John P. Lewis*

John P. Lewis
**HAYWARD PLLC**
10501 N. Central Expy, Suite 106
Dallas, Texas 75231
Telephone: (972) 755-7100
JPLewis@haywardfirm.com

Duane L. Loft*
Shireen A. Barday*
John McAdams*
**PALLAS PARTNERS (US) LLP**
75 Rockefeller Plaza
New York, NY 10001
Telephone: (212) 970-2300
Duane.Loft@pallasllp.com
Shireen.Barday@pallasllp.com
John.McAdams@pallasllp.com

**Pro hac vice* applications forthcoming*

*Counsel for Petitioners*

16